UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNATHAN K'SHAWN JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10969** |
| **TINA LEDET, ET AL.** | **SECTION: "T"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Johnathan K'Shawn Jones, a state pretrial detainee, filed this civil action pursuant to 42 U.S.C. 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

In this lawsuit, plaintiff sued the following defendants: Richard Neal; Nurses Tina Ledet, "Kelly," "David," "Kelsey," and "Dominique"; Terrebonne Parish Sheriff Jerry Larpenter; Warden Steve Bergeron; and Terrebonne Parish President Gordon Dove.

Two motions are currently pending before the Court. Defendants Neal, Ledet, "Kelly," "David," "Kelsey," and "Dominique" filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Defendants Larpenter and Bergeron then filed a separate motion to dismiss pursuant to Rule 12(b)(6);[2] however, because those two defendants had already

---

[1] Rec. Doc. 20.
[2] Rec. Doc. 22.

filed an answer,[3] their motion will treated as a Rule 12(c) motion for judgment on the pleadings.[4] Defendant Dove did not join in either motion. Plaintiff was ordered to respond to the foregoing motions on or before September 11, 2019,[5] but he has not done so.

## I.  Standards of Review

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

---

[3] Rec. Doc. 19.
[4] See Cox v. Richards, 761 F. App'x 244, 247 (5th Cir. 2019) ("Normally, a motion asserting a Rule 12(b) defense must be made before pleading if a responsive pleading is allowed. However, where, as here, a defendant files a motion to dismiss after filing a responsive pleading, the motion may be treated as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)." (citation and quotation marks omitted)); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (noting that a Rule 12(b)(6) motion filed after an answer is "treated as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted").
[5] Rec. Docs. 23 and 24.

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." Waller v. Hanlon, 922 F.3d 590, 599 (5th Cir. 2019).

## II. Plaintiff's Allegations

### A. Defendants Against Whom There are No Specific Allegations

**Sheriff Jerry Larpenter, Warden Steve Bergeron, and Parish President Gordon Dove:** In the complaint, plaintiff made no allegations whatsoever against defendants Larpenter, Bergeron, or Dove.

### B. Allegations Regarding Remaining Defendants

With respect to the remaining defendants, plaintiff made the following allegations:

**Richard Neal:** "Since in custody at Terrebonne Parish Criminal Justice Complex Head Nurse Richard 'Petie' Neal has questioned my health and made others believe that I was lying about being in pain from my sickle cell disease such correction [sic] officers and medical staff."[6]

**Nurse Tina Ledet:** "Tina Ledet has treated my illness as if it were a joke. I asked former inmate Michael 'Hotwheels' Thibodeaux to call for medical assistance. Once he did Nurse Tina entered the cell and said 'Here's your meds cry baby.' I proceeded in telling her I could not move she laughed in my face and said 'You faking so bad right now it ain't even even [sic] funny child.'"[7] "One incident that left me in [sic] for two consecutive days was with Nurse Tina Ledet. She was working under rank of Lt. Tyler Theriot on D-Shift. I was in severe pain. I had pains in my back and legs, also in my joints and knees. I asked inmate Anthony Spencer to call Medical

---

[6] Rec. Doc. 1, p. 6.
[7] Id. at pp. 6-7.

eight (8) times because I could not move even to use the restroom. When Nurse Tina finally came with Deputy Martin she proceeded in checking my pressure then she left."[8]

**Nurse Kelly:** "Nurse Kelly specifically has given me the wrong [sic] simply stating 'oops' or saying 'I don't care' when I ask her about other medical issues. She has also ignored me completely or given me the response 'Do you want your medicine or not'"[9]

**Nurse David:** "Nurse David would make false statements to my medical needs saying 'Hold on I'll be back' and then never coming back. When asked why he never returned he said unconvincingly 'Oh I was busy' even though me and other inmates could hear him conversating down the hall."[10]

**Nurse Dominique and Nurse Kelsey:** "Recently Nurse Dominique made a comment to another inmate with a catheter 'not to finger banging in here in the butthole.' I took it as she was throwing shade at me."[11] "Medical staff member Dominique considered my health an annoyment [sic] saying to Nurse David 'Every fucking night with him' while leaving me in facial crisis. Her and former Nurse Kelsey would ignore any cry for help I had while in a restraint chair. The nurses would simply say 'Mhmm I know' only checking my pressure, then saying that I was fine and could go back to my cell. Former Nurse Kelsey also had a part of the misconduct and medical assault. Leaving me in sickle cell pains for hours, claiming I was under observation even though the door to the nurses station would be closed and the restrain[t] chair I was placed in turned away from any camera."[12]

---

[8] Id. at p. 7.
[9] Id. at p. 6.
[10] Id. at p. 7.
[11] Id.
[12] Id.

### III.  Analysis of Plaintiff's Claims

### A.  Official-Capacity Claims

Plaintiff does not specify in his complaint whether he is suing the defendants in their official capacities.  However, if that was his intention, the Court notes that his allegations are insufficient to state cognizable official-capacity claims for the following reasons.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).  Accordingly, an official-capacity claim against any defendant would in reality be claims against the local governmental body itself.  However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, *a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.*  To satisfy the cause in fact requirement, *a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.*  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted).  Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."  Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.  See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F.

5

App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Therefore, plaintiff's official-capacity claims, if any, should be dismissed.

### B.  Individual-Capacity Claims

### 1.  Claims Against Sheriff Jerry Larpenter, Warden Steve Bergeron, and Parish President Gordon Dove

Plaintiff has also clearly failed to state proper individual-capacity claims as to defendants Larpenter, Bergeron, and Dove. The United States Fifth Circuit Court of Appeals has explained: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). In the complaint, plaintiff made no factual allegations whatsoever against Larpenter, Bergeron, or Dove. Where, as here, a plaintiff has merely listed individuals as defendants in the complaint but made no factual allegations against them, no cognizable individual-capacity claim has been stated against those defendants. See, e.g., Hall v. Peck, Civ. Action No. 16-13527, 2017 WL 745729, at *2 (E.D. La. Jan. 12, 2017), adopted, 2017 WL 788354 (E.D. La. Feb. 23, 2017); Reavis v. State of Louisiana, Civ. Action No. 16-1692, 2016 WL 3571440, at *3 (E.D. La. June 8, 2016), adopted, 2016 WL 3524139 (E.D. La. June 28, 2016); White v. Gusman, Civ. Action No. 14-2131, 2014 WL 6065617, at *2 (E.D. La. Nov. 12,

2014).  Accordingly, plaintiff's individual-capacity claims against Larpenter, Bergeron, and Dove should be dismissed for failure to state a claim on which relief can be granted.[13]

### 2.  Claims of Verbal Abuse

As to any individual-capacity claims against the remaining defendants, the Court first notes that a sizeable number of plaintiff's allegations concern disrespectful comments.  However, while it is unseemly for jail officials to taunt or otherwise verbally abuse inmates who have little or no ability to respond without subjecting themselves to a disciplinary action (or worse), purely verbal abuse simply does not run afoul of any federal constitutional protection.  See, e.g., Orange v. Ellis, 348 F. App'x 69, 72 (5th Cir. 2009) ("[C]laims of verbal harassment do not reveal a constitutional violation.  Mere words are not sufficient to support a Section 1983 claim." (citation omitted)); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.");  Moody v. Lee, Civ. Action No. 13-2745, 2014 WL 107944, at *5 (W.D. La. Jan. 9, 2014) ("[V]erbal threats or taunts, without more, do not support a claimed constitutional violation.  Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under § 1983.  Plaintiff's claim to the contrary … lacks an arguable basis in law and fact and must … be dismissed as frivolous." (citations omitted)).  That general rule applies to the comments by various members of the medical staff accusing plaintiff of faking or exaggerating his illness.  See, e.g., Hawkins v. Montague County, Texas, Civ. Action No. 7:10-cv-19, 2012 WL 13019539, at *13 (N.D. Tex. Mar. 15, 2012) ("Standing alone, the fact that [the jail administrator] may have subjected [a detainee] to verbal abuse by accusing him of faking his

---

[13] Although Dove has not joined in either of the pending motions, the Court, acting *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), can dismiss the claims against him for failure to state a claim on which relief can be granted.

illness or telling others that [the detainee] was malingering does not rise to the level of a constitutional violation."); Evans v. Cerliano, Civ. Action No. 6:07cv504, 2008 WL 906304, at *6 (E.D. Tex. Mar. 31, 2008) ("While [inmate's] feelings of anger and frustration over being taunted and accused of 'faking,' when in fact he had a genuine injury, were undoubtedly real and certainly understandable, this does not cause the verbal abuse to rise to the level of a constitutional violation."). Therefore, plaintiff's individual-capacity claims for verbal abuse should be dismissed.

### 3.  Claims Concerning Medical Care

The remainder of plaintiff's individual-capacity claims challenge the adequacy of the medical care he received at the jail. Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). In the instant case, plaintiff alleges that he suffers from sickle cell disease. "[S]ickle cell anemia [is a serious disease affecting blood flow that can result in pain, anemia, infection, damage to vital organs and cause death." Streeter v. Goord, 519 F. Supp. 2d 289, 293 (N.D.N.Y 2007). The defendants neither challenge plaintiff's allegation that he suffers from that disease nor dispute that it constitutes a serious medical need.

However, as noted, to state a cognizable § 1983 claim concerning his medical care, plaintiff must also allege that his serious medical needs were met with deliberate indifference. Regarding deliberate indifference, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Again, the Court notes that a number of plaintiff's allegations are based on the fact that the medical staff purportedly made disrespectful and dismissive comments to or about him. Although the Court has already explained that such comments are not independently actionable as a form of verbal abuse, it must now be noted that they also are not alone indicative of deliberate indifference. See, e.g., Boone v. Buchanan, Civ. Action No. 6:07CV242, 2008 WL 744247, at *14 (E.D. Tex. Mar. 19, 2008) ("While [a physician's assistant] may have demonstrated a poor bedside manner in stating that she believed that [plaintiff] was feigning his symptoms, this does not by itself show deliberate indifference to a serious medical need.").

Further, some of plaintiff's other allegations, while troubling, nonetheless still fall short of what is required to state an actionable § 1983 claim. This would include plaintiff's allegations that that Nurse "Kelly" accidentally gave him the wrong medication on one occasion[14] and that Nurse "David" occasionally failed to return as promised. Even if those allegations might be indicative of negligence, it is clear that "negligent medical care does not constitute a valid section 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

However, plaintiff's allegations that Nurses Tina Ledet, "Dominique," and "Kelsey" ignored his complaints of pain during sickle cell crises are a different matter. For the following reasons, the claims based on those allegations should survive the motion to dismiss, even despite the nurses' invocation of qualified immunity.

Regarding qualified immunity, the United States Fifth Circuit Court of Appeals has explained:

> "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011). It is an affirmative defense; once properly raised by the defendant, the "plaintiff has the burden to negate the assertion of qualified immunity." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009). To establish that qualified immunity does not apply, the [plaintiff] must prove [the defendant] "[(1)] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Morgan, 659 F.3d at 371.

---

[14] Although the allegation against Kelly is missing a critical word, the Court assumes that the allegation is that she gave plaintiff the wrong *medication*. See Rec. Doc. 1, p. 6.

10

King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016).

However, because the issue of qualified immunity was raised here in a *motion to dismiss*, the burden on plaintiff is relatively light and the Court's review of the issue is limited in scope. Specifically, "when … a qualified immunity defense is asserted in a ... motion to dismiss, the district court must – as always – *do no more than determine whether the plaintiff has filed a short and plain statement of his complaint,* a statement that rests on more than conclusions alone." Westfall v. Luna, 903 F.3d 534, 542 (5th Cir. 2018) (emphasis added). Therefore, all that is required at this stage of the proceeding is that plaintiff "state facts which, if proved, would defeat a claim of immunity." Id. For the following reasons, plaintiff has already met that minimal burden.

In the complaint, plaintiff alleged that he periodically experienced painful sickle cell crises. "Sickle cell crises occur when sickled red blood cells block blood flow to the limbs and organs causing sudden pain throughout the body that can affect the bones, lungs, abdomen, and joints." Pearson v. Colvin, Case No. 12 C 8574, 2014 WL 3105065, at *1 n.3 (N.D. Ill. July 1, 2014). The pain an individual experiences during sickle cell crises can be substantial. See Lockett v. Bonson, No. 19-1012, 2019 WL 4051867, at *1 (7th Cir. Aug. 28, 2019) ("During certain periods called sickle cell crises, the pain becomes so severe that it requires immediate emergency medical treatment. A sickle cell crisis usually resolves within five to seven days, although a severe crisis may result in pain that persists for weeks or months."); Harris v. Mason, No. 17-cv-570, 2019 WL 1006093, at *1 (W.D. Wis. Feb. 28, 2019) ("A sickle-cell crisis causes intense pain for the sufferer. It can occur without warning, almost anywhere in the body."); Doss v. Sweetman, Case No. 15-cv-6, 2017 WL 149976, at *1 (E.D. Wis. Jan. 13, 2017) ("Patients with sickle cell disease may develop severe pain anywhere in their body, and severe pain is an emergency called

sickle cell crisis. Treatment of sickle cell crisis may include: opioid pain medications, anti-inflammatory medications, antibiotics for infection, oxygen, and/or intravenous or oral fluids." (citations omitted)).

Plaintiff further expressly alleged in the complaint that Nurses Ledet, "Dominique," and "Kelsey" ignored his requests for assistance when he complained of severe pain during the periods of sickle cell crises. It is beyond debate that an inmate's allegation that jail officials ignored his complaints of severe pain can suffice to state a cognizable constitutional claim for deliberate indifference to a serious medical need. See, e.g., Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 422-23 (5th Cir. 2017) ("[O]ur precedent allows recovery for pain suffered during a delay in treatment caused by deliberate indifference. [Plaintiff] has alleged that he suffered a 'tremendous amount of pain' during the delay in obtaining pain medications …. These allegations are sufficient to allege that [the defendant]'s deliberate indifference in delaying medical treatment caused [plaintiff] to suffer substantial harm." (citation omitted)); Coleman v. Sweetin, 745 F.3d 756, 766 (5th Cir. 2014) ("[Plaintiff] suffered substantial harm as a result of [defendant]'s persistent refusal to answer his 'sick-call request slips' or provide pain medication even when he was in so much pain that he was unable to lie down in bed or use the toilet properly. [Defendant] also refused to provide pain medication in anticipation of [plaintiff]'s long trip to the hospital, causing him to suffer greatly. These allegations are sufficient to raise the possibility of [defendant]'s deliberate indifference to [plaintiff]'s serious medical needs."); Williams v. Certain Individual Employees of the Texas Department of Criminal Justice-Institutional Division, 480 F. App'x 251, 257 (5th Cir. 2010) ("[S]evere pain caused by the refusal to immediately treat pain can support a claim of deliberate indifference grounded in delayed treatment."); Adams v. Edwards,

12

Civ. Action No. 14-2649, 2015 WL 5308151, at *5 (E.D. La. Sept. 10, 2015) ("[I]gnoring sick-call requests complaining of pain can in some instances constitute deliberate indifference.").

For these reasons, it is evident that plaintiff has alleged a violation of a constitutional right, and the first prong of the test for overcoming an assertion of qualified immunity has therefor been met.

In addition, although the test's second prong requires that the asserted constitutional right at issue was clearly established at the time of the alleged misconduct, that requirement poses no real obstacle here. As the United States Supreme Court has explained:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citations, quotation marks, and brackets omitted). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." Mote v. Walthall, 902 F.3d 500, 506 (5th Cir. 2018) (quotation marks omitted). Here, it is beyond debate that a reasonable nurse would have understood that it would be a constitutional violation for her to ignore an inmate's complaints of severe pain. See, e.g., Williams, 480 F. App'x at 258.

In summary, because the defendants have filed only a *motion to dismiss*, and because the Court is required to accept a plaintiff's allegations as true and view them in the light most favorable to him when deciding such motions, plaintiff's allegations in the complaint are alone sufficient to rebut the nurses' assertion of qualified immunity at this stage of the proceeding. Therefore, the

motion to dismiss should be denied with respect to the individual-capacity claims against Nurses Tina Ledet, "Dominique," and "Kelsey" for ignoring plaintiff's complaints of pain during sickle cell crises.[15]

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motion filed by Terrebonne Parish Sheriff Jerry Larpenter and Warden Steve Bergeron, Rec. Doc. 22, be **GRANTED** and that the claims against those defendants be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that the claims against Terrebonne Parish President Gordon Dove be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim on which relief can be granted.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by Richard Neal and Nurses Tina Ledet, "Kelly," "David," "Kelsey," and "Dominique," Rec. Doc. 20, be **DENIED IN PART AND GRANTED IN PART**. It is **RECOMMENDED** that the motion be **DENIED** with respect to the individual-capacity claims against Nurses Tina Ledet, "Dominique," and "Kelsey" for ignoring plaintiff's complaints of pain during sickle cell crises. It is **RECOMMENDED** that the motion be **GRANTED** in all other respects and that all other claims against Richard Neal and

---

[15] However, out of an abundance of caution, the Court notes that if the defendants subsequently file a *motion for summary judgment*, which adoption of this Report and Recommendation would in no way foreclose, then "the legally relevant factors bearing upon the [qualified immunity] question will be different." Behrens v. Pelletier, 516 U.S. 299, 309 (1996). Although "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness" on a motion to dismiss, that no longer applies with respect to a motion for summary judgment. Id. Rather, "[o]n summary judgment … the plaintiff can no longer rest on the pleadings, and the court looks to *the evidence before it* (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry." (emphasis added; citation and quotation marks omitted). That may pose a problem for plaintiff, for there are any number of valid reasons that a nurse might validly deny a request for pain medication made by an inmate, even one experiencing severe pain. If the nurses here offer such reasons in a motion for summary judgment and reurge their qualified-immunity defense, then the burden will again shift to plaintiff, and he will be required to "rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010).

Nurses Tina Ledet, "Kelly," "David," "Kelsey," and "Dominique" be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   22nd   day of October, 2019.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**